UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ALAN STEELE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:03-cv-22-WGH-SEB |
| v. ) | |
| ) | |
| MAREN ENGINEERING CORPORATION ) | |
| and KINE CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MAREN ENGINEERING CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on the Consent of the parties filed March 24, 2004 (Docket No. 65), and the Order of Reference entered by the Honorable Sarah Evans Barker, District Judge, on March 25, 2004 (Docket No. 66). Defendant, Maren Engineering Corporation's Motion for Summary Judgment was filed April 11, 2005. (Docket Nos. 91-94).[1] Plaintiff filed a Response on May 12, 2005. (Docket No. 101). Defendant filed its Reply on May 19, 2005. (Docket No. 103).

---

[1] Defendant also filed a Request for Oral Argument on that same date (Docket Item 95), which request is hereby **DENIED.**

## II.  Background

Plaintiff, Alan Steele, was an employee of Rhodes, Inc. ("Rhodes") when the injury at issue in this case occurred. (Deposition of Alan Steele ("Steele Dep.") at 8, 17). Rhodes is a printing company with numerous high-speed printing presses. (Plaintiff's Response to Maren Engineering Corporation's Motion for Summary Judgment at 2). Plaintiff had been employed as a second pressman at Rhodes for five or six years prior to the incident. (*Id.* at 17). As second pressman, plaintiff assisted in running the presses at Rhodes. (Id.)  In addition to the presses, another machine that assisted in the process was a baling machine (also referred to as a baler) which would take unused or scrap paper from the presses and produce bales for recycling. (Deposition of Robert Cox ("Cox Dep.") at 5-9). One of the tasks of Rhodes employees who work on the presses would be to help feed paper into one of the balers, and when a baler became jammed someone would have to unclog it. (Id.)  When a paper jam occurred, an employee would have to enter into the baler through a side door and free up the jammed paper. (*Id.* at 5). Plaintiff was injured when he attempted to remove a paper jam from one of the balers.

In September 1995, defendant Maren Engineering Corporation ("Maren") manufactured and sold the baling machine at issue in this lawsuit to Retech. (Deposition of Donald Tamosaitis ("Tamosaitis Dep.") at 8, 15).  Retech in turn installed the baler at Rhodes. (Deposition of Larry Schafer ("Schafer Dep.") at 8-9). The baler was shipped to Rhodes on September 25, 1995, and was installed

on October 19-20, 1995. (Tamosaitis Dep. at 15-16). When the baler was initially installed at Rhodes, there was only one access door to get inside the baler. (Tamosaitis Dep. at 14; Deposition of Carl Mills ("Carl Mills Dep.") at 5).

Sometime six months to a year after the baler was installed, Rhodes made a significant change to the baler when a second door was added. (Deposition of Jeff Mills ("Jeff Mills Dep.") at 19). The door was almost identical to the original door except that it had a different safety switch. (*Id*. at 49, 51). Maren was not involved in the creation of the additional door in any manner. (Tamosaitis Dep. at 25).

On January 31 and February 1, 2001, a serviceman from Maren, Carl Mills, went to Rhodes to make repairs to the baler. (*Id*. at 32; Carl Mills Dep. at 5, 16). A report created by Maren indicates that the purpose of this service call was to repair an inserter and to perform "preventative maintenance." (Carl Mills Dep. at 14-16). Mills claims that while conducting this service call, he tested the safety switches on the baler's added door several times, and found that they functioned properly on each occasion. (*Id*. at 6-10). During the service call, Mills never observed any evidence that suggested that a safety switch had been compromised. (Affidavit of Carl Mills, ¶ 26). Mills made a formal report of the service call and informed Rhodes of the need to make numerous repairs to the baler. (Carl Mills Dep. at 31; Tamosaitis Dep. at 41-42).[2] While Mills claims that

---

[2] Even after Mills informed Rhodes of the need for repairs, Rhodes failed to make the suggested repairs. (Tamosaitis Dep. at 42).

he inspected the baler's safety switches, nowhere in the report that Mills filed is there any mention of his inspection of the safety switches. (Tamosaitis Dep. at 10-13). Additionally, plaintiff argues that, during his deposition, Mills described the wrong type of safety switch for the door that was added to the baler. (Plaintiff's Response to Maren Engineering Corporation's Motion for Summary Judgment at 5).[3] Plaintiff claims that this is more evidence to suggest that Mills did not inspect the safety switch. (Id.)

On February 9, 2001, just eight days after Mills' service call, plaintiff was working near the baler when it became jammed. (Steele Dep. at 23-24). Plaintiff informed the maintenance department that the baler was jammed, and the shift supervisor told him not to worry about it. (Deposition of Harry Stamper ("Stamper Dep.") at 6-7). Despite his shift supervisor's admonition not to worry about the baler, plaintiff returned to remove the obstruction anyway. (Steele Dep. at 7, 29). Plaintiff claims that before he entered the baler to remove the obstruction he pushed two stop buttons, one on the power box and one on the control panel opposite the baler. (*Id.* at 29, 31). At least one other employee, Todd Pulliam, believed the baler had been shut down because the fan in the baler had stopped. (Deposition of Todd Pulliam ("Pulliam Dep.") at 6). After plaintiff had presumably shut down the baler, he unlatched one of the access doors and entered the baler. (Steele Dep. at 33). After removing the obstruction,

---

[3]Mills described a "push button" safety switch, like those used in a clothes dryer, when he was explaining how he inspected the baler's added door. (Carl Mills Dep. at 9). However, the people at Rhodes had placed a magnetic switch on the baler's door when they made the addition to the baler. (Jeff Mills Dep. at 51).

plaintiff began to leave the baler. (Pulliam Dep. at 28). As plaintiff was exiting the baler through one of the access doors, the ram (which is responsible for compacting the paper into bales) began to cycle and caught his leg, crushing it before anyone could stop the baler. (Steele Dep. at 44-48). The maintenance manager at Rhodes, Dale Schmelzle, conducted an investigation into the cause of plaintiff's injury and concluded that the safety switch installed on the baler's added door had been bypassed. (Deposition of Dale Schmelzle ("Schmelzle Dep.") at 46-47). Someone had connected two wires that should not have been connected, and by connecting these wires the circuit was completed. (*Id.* at 47). In order for someone to have discovered that the wires had been connected, they would have needed to have searched for the location of the wires that were connected to the safety switch and determined where those wires led to. (*See Id.* at 48). After finding that the wires fed into a panel on the side of the baler, the individual would have then had to have opened up the panel and determined which wires were connected to the safety switch and then determined that the wires had been connected. (Id.)

At the time of plaintiff's injury, Rhodes used a safety program referred to as the lockout/tagout procedure. (Deposition of Pami Egan ("Egan Dep.") at 32-33). An employee, such as plaintiff, who wished to clean out the baler was required to notify the shift supervisor before taking any action. (*Id.* at 49). The shift supervisor was then responsible for determining whether or not such a

request should be granted. (Id.) If the supervisor approved of cleaning out the baler, then the employee was to proceed with the lockout/tagout procedure by obtaining a lock, and only authorized personnel had access to locks. (*Id.* at 48).[4] The next step in the process was to shut down the baler's main electrical disconnect; an authorized individual would place the lock on the baler and depress the stop button. (*Id.* at 33). Finally, before entering the baler, the individual was required to attempt to start the baler to ensure that it was completely shut down. (Id.) Plaintiff was trained in the lockout/tagout procedure and attended safety meetings annually from 1997 to 2000. (Steele Dep. at 12, 15-16).

Plaintiff filed suit against defendant, Maren, seeking damages for the loss of his leg.[5] (Complaint at Prayer for Relief). Plaintiff argues Maren, through its serviceman Carl Mills, was negligent in failing to properly inspect the safety switch on the baler's door or in failing to warn Rhodes of potential problems with the safety switch on the door in question.[6] (Plaintiff's Response to Maren Engineering Corporation's Motion for Summary Judgment at 2).

---

[4]Because plaintiff was only a second pressman, he could neither authorize a lockout/tagout nor initiate a lockout/tagout. (Id.)

[5]Plaintiff initially filed suit against Kernic Systems, Inc., Kine Corporation, and GE Interlogix, but has since abandoned any claims against those three defendants. Kernic Systems and GE Interlogix have been dismissed from this action. (See Docket Nos. 61, 80). Kine Corporation is still a party to this action, although it appears the corporation has never been served. (See Docket No. 24).

[6]Plaintiff also originally argued a products liability cause of action, but has since abandoned that claim as well.

### III.  Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).  The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  When ruling on the motion, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor.  *Id.* at 255.  If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999).  Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## IV. Analysis

Defendant filed this motion for summary judgment arguing that: (1) it is entitled to judgment as a matter of law on plaintiff's products liability claim because plaintiff failed to satisfy the elements of a claim under the Indiana Products Liability Act; (2) plaintiff's Complaint fails to set forth a claim of "failure to warn," and any such claim would fail as a matter of law even if asserted; (3) any claim sounding in negligence is barred by the statute of limitations; (4) plaintiff's claims should be dismissed because no reasonable jury could conclude that plaintiff was less than fifty percent at fault for his injuries; and (5) plaintiff's claims fail because defendant's product was not a proximate cause of plaintiff's injuries. (Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 1-2). Because the Court agrees that plaintiff's claim of failure to warn or inspect is without merit, and because plaintiff's claim is barred by the expiration of the statute of limitations, plaintiff's claim must be dismissed.

**A. Application of State Substantive Law**

This is a suit based on the Court's diversity jurisdiction. While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004). The Court must, therefore, apply Indiana substantive law.

### B. Plaintiff's Products Liability Claim

Plaintiff has explicitly abandoned any claims under the Indiana Products Liability Act. (Plaintiff's Response to Maren Engineering Corporation's Motion for Summary Judgment at 2). Hence, any analysis of the merits of plaintiff's products liability claim is unnecessary. Defendant's motion for summary judgment with regard to plaintiff's products liability claim is granted.

### C. Plaintiff's Claim of Failure to Warn or Inspect

Defendant argues that it had no general duty to inspect the baler's added door for safety hazards. Defendant also argues that it had no duty to warn plaintiff or Rhodes of any possible problems with the safety mechanism that was in place on the baler's added door. The Court finds both of defendant's arguments compelling.

In Indiana, the tort of negligence consists of three elements: (1) a duty that the defendant owes to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff that is caused by defendant's breach. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind. 2004)(citations omitted). The burden of proof in a negligence action is on the plaintiff. *Hi-Speed Auto Wash, Inc. v. Simeri,* 346 N.E.2d 607, 608 (Ind. Ct. App. 1976). However, "[n]egligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on *each element* must be designated to the trial court." *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456, 458 (Ind. Ct. App. 2000) (emphasis in

original).  An inference is not reasonable when it simply relies on mere speculation or conjecture.  *Id.*

The only relevant issue for the purposes of this motion for summary judgment is whether defendant owed plaintiff any duty.  "Absent a duty, there can be no breach and, therefore, no recovery in negligence."  *Merchants Nat. Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000).  Whether or not defendant owed a duty is a question of law for the Court to determine.  *Rawls v. Marsh Supermarket, Inc.*, 802 N.E.2d 457, 459 (Ind. Ct. App. 2004).  It is important to note that "[c]ourts will generally find a duty where reasonable persons would recognize and agree that it exists."  *Estate of Heck ex rel. Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind. 2003).  A duty may be created in one of three ways:  by statute, at common law, or through a gratuitous or voluntary assumption of the duty.  *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.,* 185 F.3d 732, 740 (7th Cir. 1999).  In this case, plaintiff has pointed to no statute that would place a duty upon persons such as defendant.  Hence, the Court must determine whether some common-law duty exists or if defendant's actions amounted to an assumption of duty.

### 1. *Common Law Duty*

At common law, the duty owed to an individual is that of reasonable care under the circumstances.  *Hammock v. Red Gold, Inc.,* 784 N.E.2d 495, 499 (Ind. Ct. App. 2003).  The Indiana Supreme Court has developed a three-pronged balancing test in determining whether a duty exists at common law.  The three

factors to be balanced include the relationship between the parties, the reasonable foreseeability of harm, and public policy considerations. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991).

### a) The Relationship Between the Parties

In determining whether or not the relationship between the parties gives rise to a duty, courts must determine if a contractual or special relationship exists between the parties. *Id.* at 995-96. Thus, usually there must be privity of contract between the parties in order for a duty to arise. *Id.* However, in Indiana, privity may not be required in some specific instance such as when defendant created an imminent danger to human life, defendant created an imminently dangerous product, or the defendant had knowledge of the danger. *Id.* Additionally, privity will not be required if defendant is a professional who has actual knowledge that third parties are relying on his rendering of professional services. *Id.* at 996.

In this case, plaintiff has presented no evidence to suggest that defendant created an imminent danger to human life, or created an imminently dangerous faulty safety mechanism on the baler's door.[7] Therefore, the conduct of Maren and Mills could create a duty only if they actually knew of the danger and took no action to warn of it.

---

[7] The undisputed evidence is that the door and its safety mechanism were not created or installed by Maren or Mills, but rather was put in place by someone from Rhodes.

All of Mills' testimony clearly establishes that he was unaware of any dangerous condition when he left Rhodes on February 1, 2001. The fact that he may have misdescribed the safety mechanism in his deposition allows an inference to be drawn that perhaps Mills did not thoroughly inspect the mechanism when he performed his duties. However, the fact that Mills may have made an incomplete inspection of the baler does not allow an inference to be drawn that he, in fact, knew that a danger existed at the time he left the machine. Clearly Mills, and plaintiff, knew that the baler was a dangerous machine by its nature. However, the Court believes that under Indiana law, the knowledge of a danger necessary to create a duty to warn must be knowledge that a defect exists in the manner in which the machine is operating. Merely knowing that a machine is dangerous – without any knowledge that it is not operating properly – is not sufficient to create a duty to warn. Because there is no evidence establishing that Mills knew the baler's door was not operating properly when he left, there was no duty to warn plaintiff or Rhodes.

Finally, defendant's employee Carl Mills' status could implicate the fourth avenue for avoiding the privity requirement if Mills is considered a "professional" under the common law. The cases dealing with a "professional" have normally dealt with persons such as lawyers or accountants who are licensed by the state to perform a regulated activity. The Court is not certain that Mills' role as a repairman – though requiring specialized knowledge and skill – qualifies Mills as a "professional" under the traditional definition. However, even if Mills is

considered a professional, there is still no evidence presented by plaintiff that suggests that plaintiff had actual knowledge that defendant had sent Mills to fix the baler's tie inserter. And, even if plaintiff could demonstrate that he knew that Mills had been sent to fix the baler, there is no evidence presented that suggests that Mills had been sent to Rhodes to fix the safety switch on the baler's door. Therefore, plaintiff could not have relied on defendant to perform the professional service of fixing the baler's door because that was not what Mills was sent to Rhodes to do. Because plaintiff cannot demonstrate privity, and no exception to the privity requirement exists, plaintiff has failed to demonstrate the type of relationship necessary for a common-law duty to exist.

### b) The Forseeability of the Harm

As for the issue of whether plaintiff's injury was foreseeable, the Court must examine "whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Webb v. Jarvis,* 575 N.E.2d at 996. The Court engages in this analysis because "the duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 574 (Ind. Ct. App. 1986).

Certainly a Rhodes employee such as plaintiff would be a foreseeable victim. It is foreseeable that plaintiff, an individual who at times might need to help clean out the baler, would enter the baler to remove a paper jam. It is also

foreseeable that an individual who entered the baler could be injured if the baler's ram suddenly began to cycle while he was still inside.  Thus, plaintiff has satisfied the foreseeability requirement.

### c)  Public Policy Considerations

Finally, in deciding whether a duty exists in this case, the Court must address the public policy concerns involved in holding a business liable for injuries to an individual arising from conditions that are unrelated to the repairs the business was hired to make.  The Court concludes that policy concerns weigh against the finding of a duty in this instance because allowance of recovery would place an unreasonable burden on those providing a service to the public.  Here the evidence establishes at most that defendant was hired to "repair tie inserter" and do preventative maintenance.  There is no indication that he was asked to analyze whether there were any safety concerns arising out of the fact that a substantial modification had been made to the machine after it had left Maren.  Nor is there any evidence of a request to inspect the manner in which the machine was now wired.  To impose liability under these circumstances is akin to imposing liability upon a doctor who performs carpel tunnel surgery on an individual's wrist, for example, for failing to detect a diseased liver.  Or, placing upon an automobile mechanic who replaces a vehicle's radiator a duty to detect a faulty air bag.  Ruling that a duty exists in any of these instances would discourage the doctor, or the auto mechanic, or the defendant in this case from undertaking a job because they would be exposing

themselves to too great a risk.  For this reason, the Court concludes that public policy weighs heavily against imposing a common-law duty upon defendant in this instance.  And, nothing in the Court's survey of Indiana law has convinced the Court that Indiana courts have adopted such a public policy.

Upon examining Indiana's three-pronged approach to the issue of common-law duty, the Court concludes that both a lack of an adequate relationship between the parties and public policy concerns weigh against a finding of duty in this case.

### *2. Assumption of Duty*

Even though defendant had no common-law duty to inspect the baler's door, a duty could exist, nonetheless, if defendant assumed a duty.  "Indiana recognizes that a duty may be imposed upon one who by affirmative conduct or agreement assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken." *Board of Com'rs of Monroe County v. Hatton,* 427 N.E.2d 696, 699 (Ind. Ct. App. 1981).  "It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully." *Butler v. City of Peru,* 733 N.E.2d 912, 917 (Ind. 2000).  Whether defendant has assumed a duty and the extent of the duty it assumed are usually questions of fact for the jury to determine.  *Gunter v. Village Pub*, 606 N.E.2d 1310, 1312 (Ind. Ct. App. 1993). However, in some instances where the record contains insufficient evidence to

establish a duty, the Court may decide the issue as a matter of law. *Vaughn v. Daniels Co. (West Virginia), Inc.,* 777 N.E.2d 1110, 1136 (Ind. Ct. App. 2002).

Guided by these principles, Indiana has adopted the Restatement (2nd) of Torts version of assumption of duty which states that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertakings, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Building Materials Mfg. Corp. v. T & B Structural Systems, Inc.,* 804 N.E.2d 277, 282 n.6 (Ind. Ct. App. 2004); *Harper v. Guarantee Auto Stores,* 533 N.E.2d 1258, 1262 n.3 (Ind. Ct. App. 1989). In order to demonstrate an assumption of duty, plaintiff must, therefore, demonstrate that defendant engaged in an undertaking to render specific services, and, either (1) that the risk of harm to plaintiff increased as a result of defendant's actions; (2) that defendant undertook to perform a duty owed by Rhodes to plaintiff; or (3) that the harm suffered by plaintiff was a result of plaintiff's reliance on services rendered by defendant. Whether defendant assumed a duty is complicated by the distinction between misfeasance and nonfeasance. Nonfeasance is a complete omission or a failure

to act, while misfeasance is a negligent performance or active misconduct. *Daugherty v. Fuller Engineering Service Corp.,* 615 N.E.2d 476, 480 (Ind. Ct. App. 1993); *Hatton,* 427 N.E.2d at 700.  If an individual is involved in misfeasance, no additional showing is required to demonstrate liability.  *Harper,* 533 N.E.2d at 1263 n.4.  However, if nonfeasance is involved, a beneficiary must demonstrate actual reliance on the defendant's performance.  *Hatton,* 427 N.E.2d at 700.

In the instant case, defendant either did not assume any duty whatsoever or his actions simply amounted to nonfeasance.  Plaintiff argues that Mills never inspected the baler's doors before plaintiff's accident.  (Plaintiff's Response to Maren Engineering Corporation's Motion for Summary Judgment at 2).  If Mills never inspected the doors, then there was no assumption of duty.  As the Indiana Court of Appeals explained in *Butler v. City of Peru*, there can be no duty without the actor specifically undertaking to perform the task.  *Butler,* 733 N.E.2d at 917.

Even if Mills did inspect the doors, as he claims that he did, his failure to detect the fact that a safety switch had been bypassed would simply amount to nonfeasance.  All that Mills did was engage in an omission or failure to act.  His failure to determine that the safety switch had been bypassed certainly did not amount to active misconduct.  And, in light of the fact that Mills' actions amounted, at most, to nonfeasance, plaintiff must demonstrate that he actually relied on Mills' performance.  As was discussed above, plaintiff has presented no evidence that suggests that he knew that Mills had examined the baler's doors.

Thus, it is difficult to imagine how plaintiff could have relied on Mills. In fact, the evidence suggests that plaintiff absolutely did not rely on the doors' safety switches. Plaintiff attempted to turn off all power to the baler, and he thought that he had succeeded. (Steele Dep. at 29-33). So, plaintiff entered the baler relying on the assumption that it had been completely turned off, and not on the assumption that the safety switch on the door was working and would shut off the machine. Plaintiff has, therefore, failed to demonstrate that he relied on Mills' assumption of a duty. Because of this failure, even if Mills' actions amounted to nonfeasance, defendant is not liable.

### D. The Statute of Limitations on Plaintiff's Negligence Claim

Defendant also argued in its motion for summary judgment that plaintiff's negligence claim was barred by the statute of limitations. Plaintiff's claim is governed by Indiana Code 34-11-2-4 which explains that an action for injuries to a person must be brought within two years after the cause of action accrues. Ind. Code § 34-11-2-4. In Indiana, a cause of action grounded in tort accrues and the statute of limitations begins to run when the plaintiff knew or should have known that an injury occurred. In this case plaintiff was injured on February 9, 2001. He had until February 9, 2003, to bring a claim of negligence. Because the lawsuit was filed on February 10, 2003, it was filed beyond the two-year limitations period and any claim of negligence is barred.

**E.   The Remaining Issues**

Because the Court has determined that plaintiff has failed to establish any duty on the part of defendant, and because plaintiff's claim of negligence is barred by the two-year statute of limitations, the Court declines to address the remainder of defendant's claims in its motion for summary judgment.

### IV.   Conclusion

For the reasons outlined above, defendant's motion for summary judgment is **GRANTED**.  Plaintiff's Complaint is, therefore, **DISMISSED** as to defendant Maren Engineering Corporation.  The settlement conference which had previously been set for August 18, 2005, is **VACATED.**

This case remains pending as to defendant Kine Corporation.  (See footnote 5, *supra.*)

**IT IS SO ORDERED**.

Dated:   08/18/2005

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Don George Blackmond Sr.
DORAN BLACKMOND LLP
dblackmondsr@doranblackmond.com

James Edward Bourne
SCOTT FORREST & BOURNE
jbourne@sfb-law.com

Donald Reid Forrest
SCOTT, FORREST & BOURNE
dforrest@sfb-law.com

Jeffrey L. Hansford
BOEHL STOPHER & GRAVES, LLP
jhansford@bsg-in.com

E. Graham Robb
WEBER GALLAGHER SIMPSON
  STAPLETON FIRES & NEWBY LLP
grobb@wglaw.com

David Vaughan Scott Sr.
SCOTT, FORREST & BOURNE
dave@sfb-law.com

Karl N. Truman
KARL TRUMAN LAW OFFICE LLC
karltruman@trumanlaw.com